UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

LAURIE KONECKY WATT,

                    Plaintiff,
                                             **MEMORANDUM ORDER**

                                               22-cv-07671 (JMW)

               *-against-*

AVALONBAY COMMUNITIES, INC.,

                    Defendant.
---------------------------------------------------------------X

**A P P E A R A N C E S :**

Mitchell J. Baker, Esq.
Betsy G. Desoye, Esq.
**Baker, Leshko, Saline & Blosser, LLP**
One North Lexington Avenue, 15th Fl.
White Plains, NY 10601
*Attorneys for Plaintiff*

Abed Z. Bhuyan, Esq.
**Wade Clark Mulcahy LLP**
180 Maiden Lane, Suite 901
New York, NY 10038
*Attorney for Defendant*

**WICKS,** Magistrate Judge:

       The instant discovery kerfuffle enters the murky waters of the "at issue" waiver in a

personal injury action and the concomitant scope of a medical authorization for past medical

history.  Put another way, what is the proper scope of a medical authorization in a personal injury

suit when plaintiff limits the injuries or damages for which she seeks recovery?

       Plaintiff Laurie Konecky Watt brought this case against Defendant AvalonBay

Communities, Inc. asserting negligence and negligence per se, and seeking monetary relief for a

personal injury she suffered on May 15, 2022.  (DE 1.)  Plaintiff was walking home when she

tripped and fell after her right shoe got caught on a crack in an allegedly defective speed bump. (DE 1.)  Plaintiff sustained a broken femur and required a hip-pin surgery.  (DE 15-1 at 31–32.)  The crux of Plaintiff's claims is that Defendant had a duty to keep the speed bump in good repair and reasonably safe condition, and that local and state statutes required the same.  (DE 1.)

This current dispute stems from Plaintiff's objections to both Defendant's supplemental document demands and Defendant's request for an independent neurological medical examination.  (DE 15 at 1-2.)  Before the Court now is Defendant's contested motion to compel medical authorizations regarding Plaintiff's treatment for her spine and osteoporosis, and to compel an independent neurological medical examination.  (DE 15; DE 16.)

For the reasons stated herein, Defendant's motion to compel (DE 15) is granted in part and denied in part.

## I.   APPLICABLE LEGAL STANDARDS

### A. *Motion to Compel Standard*

Pursuant to Fed. R. Civ. P. 26:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'"  *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB)(HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401).  Moreover, "[t]he party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a

2

fishing expedition." *Evans v. Calise*, No. 92-CV-8430 (PLK), 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994).  To that end, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses.  *Sibley v. Choice Hotels Int'l*, No. 14-CV-634 (JS)(AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).

Since December of 2015, "Rule 26 has defined the scope of discovery to consist of information that is relevant to the parties' 'claims and defenses.'"  *Pothen v. Stony Brook Univ.*, No. 13-CV-6170 (JFB)(AYS), 2017 WL 1025856, at *2 (E.D.N.Y. Mar. 15, 2017).  "Thus, the discretionary authority to allow discovery of 'any matter relevant to the subject matter involved in the action' has been eliminated," and permissible discovery under Rule 26 must be relevant "to any party's claim or defense," and that means "proportional to the needs of the case."  *Id.* at *3 (citing Fed. R. Civ. P. 26(b)(1)).  Proportionality goes "hand-in-hand" with relevance.  *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS)(AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020).  That is, the more relevant the information sought is, the less likely the Court would find the subject discovery disproportionate.  *Id.*

It is beyond peradventure that "[m]otions to compel are left to the court's sound discretion."  *Mirra v. Jordan*, No. 13-CV-5519 (AT)(KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867 (SJF)(AKT), 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").  It is against this backdrop that the Court considers the present application.

### B. *Applicable Privilege and Waiver Standard*

Although the Federal Rules govern scope of disclosure, it is New York law that governs

the application of the privilege rules in a diversity action like here.  *See* Fed. R. Evid. 501 ("state

law governs privilege regarding a claim or defense for which state law supplies the rule of

decision"); *Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989) ("in a diversity

case the existence of a privilege is to be determined by reference to state law"); *Conti v. Doe*,

No. 17-CV-9268 (VEC)(RWL), 2019 WL 5198882, at *2 (S.D.N.Y. Oct. 1, 2019) ("As the

instant matter is a diversity action, this Court must look to state law to determine questions of

privilege.").[1]

New York law has long recognized a physician-patient privilege, which protects the

information acquired by a medical professional "in attending a patient in a professional capacity,

and which was necessary to enable the medical professional to act in that capacity."  *Hasemann*

*v. Gerber Prods. Co.*, Nos. 15-CV-2995, 16-CV-1153, 2:17-CV-0093 (MKB)(RER), 2018 WL

5651357, at *1 (E.D.N.Y. Oct. 9, 2018) (citing N.Y. C.P.L.R. § 4504(a).  "A party who

affirmatively places his or her physical or mental condition in issue has waived any physician-

patient privilege that may attach to the records of that condition and must provide duly-executed

and acknowledged written authorizations for their release."  *Connolly v. Peerless Ins. Co.*, No.

---

[1] The Court also refers to federal cases since even federal law recognizes this principle, *see Vargas v. United States*, 401 F. Supp. 3d 346, 347 (E.D.N.Y. 2018) ("A plaintiff waives his right to privacy in his medical records when he puts his medical condition at issue in a lawsuit."), and the parties cite exclusively to federal law in their papers (DE 15; DE 16).  *See Henneberry v. Sumitomo Corp. of Am.*, No. 04-CV-2128 (PKL), 2005 WL 991772, at *5 (S.D.N.Y. Apr. 27, 2005) ("[T]he parties' briefs assumed that New York State law applies. Where the parties so assume, the Court need not address choice of law *sua sponte*.").

10-CV-789 (ADS)(WDW), 2011 WL 13305348, at *5 (E.D.N.Y. Apr. 22, 2011) (citing *Corbey v. Allam*, 871 N.Y.S.2d 712, 713 (App. Div. 2d Dep't 2009)).  It naturally follows then that "[w]hen the mental or physical condition of the plaintiff is in issue, the physician-patient privilege is waived and cannot be invoked to foreclose discovery of relevant evidence."  *Davis v. Ross*, 107 F.R.D. 326, 329 (S.D.N.Y. 1985) (citing New York law). That is, one cannot sue for an injury on the one hand and on the other, deny access to what could be relevant prior medical history or pre-conditions.

However, this so-called "at issue waiver" is not boundless.  Putting one's medical condition at issue is generally not considered a "wholesale" affair.  *See Carter v. Fantauzzo*, 684 N.Y.S.2d 384, 385 (App. Div. 4th Dep't 1998) ("[W]aiver, however, does not permit wholesale discovery of information regarding the protected party's physical and mental condition."(citation omitted)).  A party waives privilege "only with respect to the physical and mental conditions affirmatively placed in controversy."  *Connolly*, 2011 WL 13305348, at *5 (citing New York law); *McLane v. Damiano*, 762 N.Y.S.2d 814, 814 (App. Div. 2d Dep't 2003) ("[A] party does not waive the privilege with respect to unrelated illnesses or treatments.").  Additionally, waiver may result when "the patient personally, or through his witnesses, either lay or medical, introduces testimony or documents concerning privileged information . . . It also results from failure to object to disclosure of privileged information[.]"  *See Palma v. Harnick*, 817 N.Y.S.2d 640, 642 (App. Div. 2d Dep't 2006).  To this end, the Court considers, *inter alia*, the allegations in the pleadings and the injuries claimed.

The party seeking discovery bears the burden of establishing relevance.  *See Mandell v. The Maxon Co., Inc.*, No. 06-CV-0460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance.").  The

rule is not different when it comes to a party seeking medical records from an adverse party. That is, "[t]he burden of proving that a party's mental or physical condition is in controversy, for purposes of obtaining relevant . . . records, is on the party seeking the records." *Budano v. Gurdon*, 948 N.Y.S.2d 612, 615 (App. Div. 1st Dep't 2013).  However, once the party seeking disclosure has met its initial burden of showing that the resisting party put a particular condition at issue, the burden shifts to the resisting party to show that the information sought remains privileged.  *See Palma*, 817 N.Y.S.2d at 642.

## II.    DISCUSSION

Plaintiff here complains of a broken femur, which resulted in surgery -- specifically a hip pin.  (DE 1-1 at 31.)  The parties agree that when a plaintiff affirmatively puts a medical condition at issue, disclosure of related medical records is appropriate.  The parties, however, sharply disagree as to whether, under the circumstances presented here, Plaintiff has put her spinal and osteoporosis related medical history at issue -- waiving any applicable privilege that may otherwise shield those records from disclosure.  That analysis dovetails with the parties' related disagreement -- whether Defendant has made a threshold showing of relevance.

Plaintiff presents a handlist of arguments as follows (i)  Defendant has failed to make a non-speculative showing that the subject medical records or Plaintiff's neurological condition are relevant to any of Plaintiff's sustained injuries or claimed damages; (ii) Plaintiff alleging a serious injury does not itself allow Defendant full access to Plaintiff's medical history; and (iii) Defendant is responsible for Plaintiff's injuries irrespective of pre-existing conditions given the eggshell skull rule.  (DE 16 at 2.)  Defendant on the other hand avers that the discovery sought is relevant to causation.  Defendant argues that Plaintiff's medical records show that (i) Plaintiff's magnetic resonance imaging ("MRI") test conducted the day of the accident reflects

"[d]egenerative changes" to Plaintiff's spine, and to her hip joints; (ii) Plaintiff has a history of "neuropathy" and "osteoporosis." (DE 15 at 2–3.) Defendant further argues that since Plaintiff's pre-existing injuries or conditions may lead to impairment of the injuries resulting from the fall, they are relevant. (DE 15 at 3.)

First, as far as medical records related to osteoporosis are concerned, Plaintiff placed them into issue by virtue of her allegations in this litigation. Plaintiff injured her femur and underwent a hip-pin surgery. Plaintiff testified that she was "just diagnosed [with osteoporosis] right prior to the fall" (DE 15-1 at 156-157), osteoporosis is a bone disease that causes bones to weaken, and Plaintiff's MRI showed degenerative changes to her hip joints the day of the accident. (DE 15 at 2-3.) Plaintiff's osteoporosis is therefore "sufficiently related" to Plaintiff's asserted injures. *Cf. Romance v. Zavala*, 950 N.Y.S.2d 391-92 (App. Div. 2d Dep't 2012) (finding medical records related to plaintiff's kidney disease sufficiently related to plaintiff's asserted injuries to his lower back and difficulty urinating); *Josephs v. Oliver*, 367 N.Y.S.2d 836, 837 (App. Div. 2d Dep't 1975) (finding waiver when medical records sought were "sufficiently related" to plaintiff's "alleged physical impairment to be covered by the waiver").

Moreover, Plaintiff's invocation of the "eggshell skull" rule does not render the medical records irrelevant. That rule provides that a defendant takes a plaintiff as they find them and are liable even for exacerbating pre-existing conditions. *See Maurer v. United States*, 668 F.2d 98, 100 (2d Cir. 1981) ("[W]hen a plaintiff is incapacitated or disabled prior to an accident, the defendant is liable only for the additional harm or aggravation that he caused."); *Powell v. Metro. Entm't Co.*, 762 N.Y.S.2d 782, 785 (N.Y. Sup. Ct. 2003) (observing that "[l]awyers learn in law school that a plaintiff with an 'eggshell skull' can collect from an assailant who inflicts a slight blow to the head"). Though Plaintiff does not necessarily argue exacerbation, the medical

records are relevant to damages.  Without Plaintiff's osteoporosis medical records, there is no telling what effect, if any, the condition would have had on Plaintiff's injured areas irrespective of the accident.  *Maurer*, 668 F.2d at 100 (noting where "a plaintiff has a preexisting condition that would inevitably worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages discounted to reflect the proportion of damages that would have been suffered even in the absence of the subsequent injury").  Nonetheless, the subject medical records remain relevant to the extent they may illuminate whether the speed bump, rather than a pre-existing issue with Plaintiff's hip, may have caused the fall in the first place.  *See Keleman v. Quinton Fitness Equipment, Inc.*, 805 N.Y.S.2d 82, 83 (App Div. 1st Dep't 2005) (finding that "[p]laintiff's multiple sclerosis/osteoporosis may have affected her ability to ambulate, as indicated by the medical records she did release" and ordering disclosure of medical records where plaintiff fell off a treadmill, and claimed injury to her back and aggravation of a pre-existing back injury).

Second, the Court finds that medical records related to Plaintiff's spinal treatment and a neurological examination are not warranted since Plaintiff has not put those conditions at issue nor do they appear relevant to any of Defendant's claims or defenses.  Defendant notes that Plaintiff had two spinal surgeries prior to the accident, and thus, an examination of her spine affects Defendant's defense "as litigation continues."  (DE 15 at 3.)  Defendant further contends that since "any spinal surgery necessarily affects a patient's nerves," then "one cannot examine plaintiff's orthopedic condition without examining plaintiff's spine."  (*Id.*)

Plaintiff "did not place [her] entire medical condition in controversy by suing to recover damages for orthopedic injuries."  *Gumbs v. Flushing Town Ctr. III, L.P.*, 981 N.Y.S.2d 394, 396 (App. Div. 1st Dep't 2014).  Defendant has failed to show how Plaintiff's spinal treatment is

related to her alleged injuries of a broken femur or her hip pin.  Critically, Plaintiff also represents she is not claiming any damages with respect to her spine or any neurological condition.  (DE 16.)  Defendant's argument -- albeit tacitly -- assumes that Plaintiff's nerves were put into issue and are somehow relevant.  But Defendant fails to connect the dots.  Indeed, the motion to compel is not supported by any medical testimony or sworn statement (affidavit or declaration) to make this connection.  Defendant has not met its burden to justify invading the privilege.  Instead, the Court is left with the question, *qui sait*?  That is, does spinal treatment necessarily affects a patient's nerves, and if so, so what if Plaintiff is not claiming neurological damage?  How are Plaintiff's nerves and neurological condition sufficiently related to her alleged injuries?  How would these records or a neurological examination move the needle with respect to causation?  For example, are there any specific neurological deficits that are relevant to the accident?  *See Keleman*, 805 N.Y.S.2d at 83 (noting that plaintiff's "vision issues and neurological deficits may have affected her eye-hand coordination and ability to operate the treadmill's control panel safely").  In sum, Defendant has not carried its burden to show that Plaintiff put her spinal records or her neurological condition at issue, and thus, those records remain privileged.  In any event, Defendant has not articulated the relevance of the records or the examination to its claims or defenses.

## <u>CONCLUSION</u>

Defendant's request to compel medical records related to Plaintiff's osteoporosis that are responsive to Defendant's supplemental demand is granted.  Plaintiff shall make such production within ten (10) days of the posting of this Order.  Defendant's requests to compel medical records related to Plaintiff's spinal treatment, and to compel a neurological examination, are denied.

Dated: Central Islip, New York
       August 11, 2023

S O   O R D E R E D:

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge