**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
LAURIE KONECKY WATT,

               *Plaintiff,*


               -against-


AVALONBAY COMMUNITIES, INC.,

               *Defendant.*
-------------------------------------------------------------X

**FILED**
**CLERK**

**2/4/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**OPINION**
**AND ORDER**

22-cv-07671 (JMW)

**A P P E A R A N C E S:**

    Mitchell J. Baker
    **Baker, Leshko, Saline & Blosser, LLP**
    One North Lexington Avenue, 15th Fl.
    White Plains, NY 10601
    *Attorneys for Plaintiff*

    Abed Z. Bhuyan
    **Wade Clark Mulcahy LLP**
    180 Maiden Lane, Suite 901
    New York, NY 10038
    *Attorney for Defendant*

**WICKS**, Magistrate Judge:


This case presents the question of whether the "trivial defect" doctrine under New York law forecloses a negligence claim based upon a trip and fall from a speed hump. Plaintiff Laurie Konecky Watt ("Plaintiff" or "Ms. Watt") commenced this action against Defendant AvalonBay Communities, Inc. ("Defendant" or "AvalonBay") for negligence and negligence per se stemming from a trip and fall that occurred at Defendant's property located in Melville, New York, where she resided. (*See generally*, ECF No. 1.) Plaintiff alleges that due to the absence of a pedestrian sidewalk, she was caused to walk on the roadway to access her unit, which Defendant

1

failed to maintain in good repair and in a reasonably safe condition leading to her shoe becoming caught on a crack contained at the base of a "speed hump". (*Id.*) While majority of the motion papers state that the defect was a "speed hump", some portions discuss a "speed bump" instead. However, in Plaintiff's deposition, Plaintiff clarifies "[i]t's really not a speed bump. It's a speed hump." (*See* ECF No. 34-5 at 114.  The Complaint, on the other hand, alleges the defect to be a "speed bump".  There are differences between the two, but the goal of both is to ensure safety and slow down vehicles.[1] Discovery is complete and now before the Court is Defendant's

---

[1] The differences between speed bumps and humps are best summarized as the below.

> Speed bumps are raised pavement structures that are typically 3 to 4 inches high and 12 to 20 feet long. They are designed to force drivers to slow down to 5-10 miles per hour. Speed bumps are usually used in areas with low traffic volume, such as parking lots, residential streets, and private roads. They are often placed near pedestrian crossings, school zones, or other areas where there is a high risk of accidents involving pedestrians.
>
> …
>
> Speed humps are similar to speed bumps, but they are longer and more gradual. They are typically 3 to 4 inches high, but they can be up to 14 feet long. Unlike speed bumps, which are usually placed in a row, speed humps are usually placed several hundred feet apart. This makes them more suitable for use on roads with higher traffic volumes, such as residential streets and collector roads.

*Speed Bumps vs Speed Humps*, ROADSKY GRP. (Mar. 24, 2023), https://roadskysafety.com/speed-bumps-vs-speed-humps; *see also* Daniel Wright, *Speed Bumps Vs. Speed Humps: Difference And Uses*, PROLINE PLM (Mar. 6, 2023), https://prolineplm.com/speed-bumps-vs-speed-humps-difference-and-uses/ (illustrating the differences in a chart, attached below).  As such, it appears the proper phrase here is a "speed bump" not "hump".

| Feature | Speed Bumps | Speed Humps |
| --- | --- | --- |
| Profile | Shorter, steeper, more abrupt | Wider, gradual incline and decline |
| Speed Reduction | 2–10 mph | 10–25 mph |
| Comfort Level | Lower (harsher ride) | Higher (smoother ride) |
| Best Suited For | Parking lots, driveways | Residential streets, school zones |
| Emergency Vehicle Compatibility | Poor | Moderate |
| Pedestrian Safety | High in confined areas | High in community spaces |

*Id.*

Motion for Summary Judgment on the Complaint (ECF No. 34), Plaintiff's opposition papers

(ECF Nos. 35-37), and Defendant's reply (ECF No. 39).  Oral argument on the motion was held

on January 28, 2026. (*See* Electronic Order dated 1/28/2026.) For the reasons that follow,

Defendant's Motion for Summary Judgment (ECF No. 34) is **GRANTED**.

## FACTUAL BACKGROUND

The following facts are taken from the parties' Local Rule 56.1(a) Statements and are

uncontested unless otherwise noted.[2]

On May 15, 2022, at 3:00 p.m. Plaintiff tripped over a speed hump on a private roadway

within her community outside her residence at 620 Court North Drive, Melville, New York.

(ECF No. 34-17 at ¶ 1.) This occurred as Plaintiff was walking from a nearby parking lot in the

community. (ECF No. 34-3 at ¶ 9.) During oral argument, Defendant clarified that the speed

hump is located on a street in the private residence community. It is uncontroverted that at that

time, it was daylight, the weather was "beautiful", and no obstructions were present. (ECF No.

34-17 at ¶ 2.) Plaintiff takes issue with this statement to the extent that nothing obscured her

---

[2] The facts set forth above are taken from the parties' respective Rule 56.1 Statements and corresponding responses. *See* ECF Nos. 34-17 (AvalonBay's 56.1 statement) and 36 (Plaintiff's response). Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement means that the Court has deemed the underlying factual allegation undisputed.  Any citation to a Rule 56.1 statement incorporates by reference the documents cited in it.  Where relevant, however, the Court may also cite directly to an underlying document.  The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal.  *See Stewart v. Fashion Inst. of Tech.,* No. 18-CV-12297 (LJL), 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("'[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record.'") (quoting *Knight v. N.Y.C. Hous. Auth.*, No. 03-CV-2746 (DAB), 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007)); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."). "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s.]" *McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020).

view. (ECF No. 36 at ¶ 2.) Plaintiff claims her toe got caught in a crack within the speed hump. (ECF No. 34-17 at ¶ 3.) Plaintiff clarifies that her shoe is what got caught in the crack. (ECF No. 36 at ¶ 3.)

Plaintiff's open-toed right shoe contained a dark mark where she claims her shoe made contact with the speed hump. (ECF No. 34-17 at ¶ 4.)  Plaintiff was unable to represent whether the mark occurred after the fall or was the point of contact of her shoe with the crack.  According to Plaintiff, the crack of the speed hump – the defect at issue – was ½ inch in vertical dimension. (*Id.* at ¶ 5.) Plaintiff's husband, Mitchell Watt, lived at this residence and was present when the incident occurred. (*Id.* at ¶ 6.) Mr. Watt walked over this same speed hump at issue immediately prior to Plaintiff. (*Id.*) Mr. Watt did observe that the speed hump was not in great condition and was aware prior to May 15, 2022, that there were visible cracks. (*Id.*) Plaintiff admits the foregoing while stating that there is no indication that Mr. Watt walked over the defect. (ECF No. 36 at ¶ 6.)

At the time of the incident, Deosaran Ramkissoon ("Mr. Ramkissoon") was Defendant's maintenance manager. (*Id.* at ¶ 7.) Mr. Ramkissoon's staff conducts monthly general inspections and there is an unwritten "if you see something, say something" daily policy. (*Id.*) Mr. Ramkissoon described the condition of the speed hump as normal, a bit faded, and a wear and tear as time goes by. (*Id.*) Plaintiff adds to the above by stating that Defendant did not inspect the full grounds of the Melville location and did not specifically inspect the roadway or speed hump except by a vehicle drive through. (ECF No. 36 at ¶ 7.) Plaintiff does not allege actual notice of the subject defect. (ECF No. 34-17 at ¶ 8.)

4

## THE LEGAL FRAMEWORK

On a summary judgment motion, the movant must demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the movant to demonstrate the absence of a genuine issue of material fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim. *Celotex Corp. v. Catrett¸* 477 U.S. 317, 323, 325 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets its initial burden, the burden shifts and the nonmovant may defeat the motion only by adducing evidence of specific facts that raise a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York¸* 316 F.3d 93, 100 (2d Cir. 2002).

"The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts." *Sosa v. New York City Dep't of Educ.*, 406 F. Supp. 3d 266, 268 (E.D.N.Y. 2019) (internal citations omitted). The role of the court at the summary judgment phase is not to *resolve* disputed issues of fact but only undertake an analysis to *identify* whether triable issues of fact exist. *See Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021). That is, the court's function is "issue-finding," not "issue-resolution." *Carolina Cas. Ins. Co. v. Cap. Trucking Inc.*, 523 F. Supp.3d 661, 668 (S.D.N.Y. 2021) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship* 22 F.3d 1219, 1224 (2d. Cir. 1994)). *Au fond*, the court's role is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State*

5

*Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (citing *Anderson*, 477 U.S. at 248 and *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)).

It is within this framework that the motion for summary judgment is considered.

## DISCUSSION

Defendant seeks summary judgment on all claims in the Complaint under Fed. R. Civ. P. 56. Even viewed in the light most favorable to Plaintiff, Defendant alleges that the claims fail as the evidence proffered by Plaintiff confirms that the alleged defect falls squarely within the so-called trivial defect doctrine under New York law and are therefore not actionable. (ECF Nos. 34-1 at 1-2; 39 at 1.) The threshold issue is whether this is a trivial defect which if so, is not actionable. If not, then the Court must address the issue of constructive notice.

As an initial matter, the burden on summary judgment is considered a procedural issue and therefore the Federal Rules apply. "The federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law in a slip-and-fall action." *Sampson v. Sarah Lawrence Coll.*, No. 18-CV-7518 (JCM), 2021 WL 3855862, at *5 (S.D.N.Y. Aug. 26, 2021) (collecting cases). Here the movant "need not make any affirmative *prima facie* showing on [a] motion for summary judgment, and may discharge its burden of proof merely 'by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim.'" *Id.* (quoting *Vasquez v. United States*, No. 14-CV-1510 (DF), 2016 WL 315879, at *5 (S.D.N.Y. Jan. 15, 2016)) (emphasis in original); *see also e.g., Moy v. Target Corp.*, 629 F. Supp. 3d 205, 209–10 n.5 (S.D.N.Y. 2022) (internal citations omitted) ("The distinction between the federal and more 'plaintiff-friendly' state standard is significant in cases where the plaintiff relies on 'a slim set of baseline facts.' In such cases, a defendant in federal court can meet its burden by showing the absence of evidence supporting the plaintiff's case, whereas a defendant in state court must

6

show affirmative evidence …."); *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775 (GWG), 2013 WL 4017166, at *7 (S.D.N.Y. Aug. 7, 2013) (same).  So, the "procedural 'burden-shifting standard' does not apply in federal diversity cases." *Moy*, 629 F. Supp. 3d at 209–10 n.6 (S.D.N.Y. 2022) (internal citations omitted); *see also Strass v. Costco Wholesale Corp.*, No. 14-CV-06924 (PKC)(VMS), 2016 WL 3448578, at *6 (E.D.N.Y. June 17, 2016) ("Plaintiffs, and not Defendant, bear the burden of putting forth sufficient evidence to establish a triable issue of fact …") The substantive law of negligence in New York applies.

Under New York law, a *prima facie* case of negligence requires a plaintiff to show: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury resulting therefrom." *Solomon v. City of New York*, 489 N.E.2d 1294 (N.Y. 1985); *see also Tzul v. United States*, No. 12-CV-804 (NGG)(JMA), 2014 WL 4773972, at *3 (E.D.N.Y. Aug. 14, 2014), *report and recommendation adopted*, No. 12-CV-804 (NGG)(JMA), 2014 WL 4773974 (E.D.N.Y. Sept. 24, 2014) (citing *Solomon*, 489 N.E.2d 1294) (same). Specifically, in a trip and fall case like this, plaintiff must establish that (i) a hazardous or dangerous condition existed, and (ii) that the defendant either created the condition or had actual or constructive knowledge of it and failed to correct it within a reasonable time after acquiring such knowledge. *See Edwards v. Terryville Meat Co.*, 577 N.Y.S.2d 477, 478 (N.Y. App. Div. 2d Dep't 1991)*; see also Valente v. United States*, No. 17-CV-3853 (JMA)(JMW), 2023 WL 1838012, at *10 (E.D.N.Y. Feb. 8, 2023), *report and recommendation adopted,* No. 17-CV-03853 (JMA)(JMW), 2023 WL 2522815 (E.D.N.Y. Mar. 15, 2023) (quoting *Leonardi v. United States*, No. 11-CV-4827 (LDW) (GRB), 2013 WL 5295714, at *2 (E.D.N.Y. Sept. 18, 2013) (same).

Defendant alleges the defect, if any, is trivial and thus not actionable and the Court need not look further. (ECF No. 34-1 at 4-6.) Plaintiff on the other hand argues first, that triviality should

7

be left to the jury, thereby warranting denial of summary judgment and second, where negligence

per se is alleged, the triviality defense must be determined by the jury.  (ECF No. 35 at 7, 11-12.)

> While New York usually leaves questions of negligence like this one to factfinders, *see Hutchinson v. Sheridan Hill House Corp.*, 26 N.Y.3d 66, 77, 19 N.Y.S.3d 802, 41 N.E.3d 766 (2015), it maintains an exception in slip-and-fall cases for what it calls the "trivial defect doctrine." *Id.* at 77, 19 N.Y.S.3d 802, 41 N.E.3d 766. That doctrine has long recognized "that a defendant 'may not be cast in damages for negligent maintenance by reason of trivial defects on a walkway ... as a consequence of which a pedestrian might merely stumble, stub his toes, or trip over a raised projection.'" *Id.* at 78, 19 N.Y.S.3d 802, 41 N.E.3d 766 (quoting *Guerrieri v. Summa*, 193 A.D.2d 647, 598 N.Y.S.2d 4, 5 (2d Dep't 1993)).

*Coyle v. United States*, 954 F.3d 146, 149 (2d Cir. 2020) (affirming summary judgment on a finding that the alleged dangerous condition was a trivial defect and failed as a matter of law); *see also Bursztein v. Best Buy Stores, L.P.*, No. 20-CV-76 (AT), 2021 WL 3371036, at *2 (S.D.N.Y. Aug. 3, 2021) (quoting *Guerrieri*, 598 N.Y.S.2d at 5) ("New York law maintains an exception in slip-and-fall cases for 'trivial defect[s].' … A property owner may not be held liable for 'trivial defects on a walkway ... as a consequence of which a pedestrian might merely stumble, stub his toes, or trip over a raised projection.'")

"The trivial defect doctrine is grounded on a fundamental principle that spans all types of

liability: that if a defect is so slight that no careful or prudent [person] would reasonably

anticipate any danger from its existence, and yet an accident occurs that is traceable to the defect,

there is no liability." *Hutchinson v. Sheridan Hill House Corp.*, 41 N.E.3d 766, 775 (N.Y. 2015)

(internal citations and quotations omitted). This doctrine applies equally to private landlords and

municipalities. *Id.* (collecting cases). Simply put, a trivial defect insulates a defendant from

liability.  As the Court of Appeals of New York stated,

> [t]here is no rule that [tort] liability, in a case involving minor defects in the pavement, turns upon whether the hole or depression, causing the pedestrian to fall, is four inches, or any other number of inches, in depth.... The critical inquiry is whether, *after considering the time, place, and surrounding circumstances of plaintiff's injury, along with the crack's height differential, a defective condition can reasonably be said to exist.*

*Trincere v. Cnty. of Suffolk*, 688 N.E.2d 489, 490 (N.Y. 1997) (internal quotations & citations omitted) (emphasis added); *see also* Meggin Bednarczyk, Annette Cordasco, *How Small is Too Small: the Trivial Doctrine in New York Law*, CITYLAND NEW YORK CITY LAND USE AND LEGAL

8

NEWS, (May 23, 2016), https://www.citylandnyc.org/small-small-trivial-doctrine-new-york-law/ (discussing the same).

Importantly, "[n]ot all defects are unreasonable and therefore actionable"; "[s]ome defects are trivial as a matter of law." *Estrella-Jones v. United States*, No. 13-CV-5454 (CBA) (LB), 2016 WL 7243540, at *3 (E.D.N.Y. Dec. 14, 2016), *aff'd*, 706 F. App'x 28 (2d Cir. 2017), *as amended* (Dec. 21, 2017) (citing *Natijehbashem v. United States*, 828 F. Supp. 2d 499, 507 (E.D.N.Y. 2011) (collecting cases) (discussing that generally defects under an inch are trivial)).

This principle is properly considered at the summary judgment stage. *See e.g., Velez v. Inst. of Design & Const., Inc.*, 782 N.Y.S.2d 755, 755 (N.Y. App. Div. 2d Dep't 2004) (affirming summary judgment dismissing claims) ("based on the photographs depicting the area where the plaintiff fell, as well as other evidence presented, the Supreme Court properly found that the alleged defect which caused the plaintiff to trip and fall was trivial and not actionable as a matter of law"); *Balbo v. Greenfield's Mkt. of Bethpage, LLC*, 190 N.Y.S.3d 146, 148 (N.Y. App. Div. 2d Dep't 2023) (granting summary judgment where considering all the circumstances including that plaintiff visited the location many times, there was good weather, and the photos submitted showed " that the alleged defect was trivial"); *Clarke v. 90 S. Park Owners, Inc.*, 213 N.Y.S.3d 159, 161 (N.Y. App. Div. 2d Dep't 2024) (affirming summary judgment) ("The plaintiff testified at her deposition that she had walked on that sidewalk many times in the past, she had never tripped or fallen on the sidewalk before, she did not notice the elevation in the sidewalk, nothing obstructed her view of the sidewalk, and the lighting conditions allowed her to see the sidewalk without any difficulty"); *Campbell-Ramdin v. Town of Hempstead*, 212 N.Y.S.3d 187, 188 (N.Y. App. Div. 2d Dep't 2024) (affirming summary judgment) ("the alleged defect in the sidewalk was physically insignificant, that the accident occurred on a sunny day, and that there was

nothing obstructing the plaintiff's view or path at the time of the accident … the alleged defect was trivial [and] not actionable").

The parties have stipulated to the admissibility of the following pictures that depict the speed hump and Plaintiff's shoe mark on the shoes worn by Plaintiff at the time of the incident. (ECF No. 34-12.) Plaintiff provided the following photos.



A portion of the speed hump located in the Avalon Meville location depicting the defect.

(ECF No. 34-10 (known as Exhibit H).)



A portion of the speed hump located in the Avalon Meville location depicting the defect. Plaintiff at oral argument could not conclusively verify the person in this picture but assumed it was someone assisting the expert.

(*Id.*)



<u>Additional pictures of the cracks and condition of the speed hump.</u>

(*Id.*)



A ruler pointing to the alleged crack in the speed hump that caused the injuries.

(*Id.*)



A screenshot of a video taken by Defendant's Expert measuring the size of the cracks through the use of a profilometer.

(ECF No. 34-16 (known as Exhibit C of Defendant's Expert's Declaration).) [3]

---

[3] A *sua sponte* review of the above pictures measuring the alleged crack illustrates that the defect is likely less than half an inch. Indeed, the profilometer used shows that the measurement to be at the less than half-inch mark. Notwithstanding, the Court will follow the parties' agreed-upon measurement, which is half an inch. Indeed, at oral argument Defendant admits that its expert found it to be less than half an inch but for purposes of the instant motion, conceded to the half inch measurement.

 

<u>Pictures of Plaintiff's shoe indicating scruff marks on her shoe following the incident.</u>

(ECF No. 34-11 at 2-3 (known as Exhibit I).)[4]

Plaintiff argues that the defect was a "trap", which renders a defendant liable who might otherwise escape liability if the defect is trivial. (ECF No. 35 at 9-10.) *See Estrella-Jones*, 2016 WL 7243540, at *4–5 (collecting New York cases and finding no evidence "that the worn pavement here was trap—or snare-like") ("[a] condition that is ordinarily apparent to a person making reasonable use of his or her senses may be rendered a trap for the unwary where the

---

[4] At oral argument, Plaintiff stated that the scuff is where plaintiff's shoe met the defect or on some part of the speed hump. There is no dispute as to the scuff on the shoe as stipulated.  However, Plaintiff stated it is uncertain where exactly the scuff spot was made but it was somewhere on the speed hump.

condition is obscured or the plaintiff is distracted.") "Generally, a trap is an artificially created inherently dangerous but deceptively innocent instrumentality or condition. Its distinguishing characteristic, as compared to a mere defect in the premises, is that it is an inherently dangerous instrumentality with a deceptive appearance of safety that is deliberately created or constructed." *Id.* (quoting 85 N.Y. Jur. 2d Premises Liability § 34; citing *Mayer v. Temple Properties*, 122 N.E.2d 909 (N.Y. 1954)); *see also Farruggio v. Kraft Heinz Food Co.*, 747 F. Supp. 3d 420, 425 (N.D.N.Y. 2024) (quoting *Smith v. Target Corp.*, No. 22-CV-00058 (AMN)(ML), 2023 WL 5959545, at *3 (N.D.N.Y. Sept. 13, 2023) ("[A]n ordinarily apparent condition 'may be rendered a trap for the unwary where the condition is obscured by crowds or the plaintiff's attention is otherwise distracted.'")).

Defendant's expert, Angela Levitan, opined that whether the crack in the speed hump was ¼ of an inch or ½ of an inch, Plaintiff's shoe would not have been caught in the crack, and it is likely that Plaintiff simply lost her balance leading to the fall. (ECF No. 34-13 at ¶ 12.) In contrast, Plaintiff's expert James Pugh,[5] concluded that the speed hump was "in a very poor state of repair, with numerous fissures, cracks, and yellow paint in the process of wearing completely off" and that this, coupled with the lack of a sidewalk, lead to the incident. (ECF No. 37 at 4.) Nonetheless, the deposition transcript, expert reports, as well as the photographs illustrate that no trap was present. *See Dery v. K Mart Corp.*, 924 N.Y.S.2d 154, 156 (N.Y. App. Div. 2d Dep't 2011) (finding that upon review of the photographs and other evidence of the alleged defect being a chip in a curb, the action was trivial and was not a trap); *Outlaw v. Citibank, N.A.*, 826 N.Y.S.2d 642, 644 (N.Y. App. Div. 2d Dep't 2006) ("After examination of the photographs and the other evidence in the record, we find that, as a matter of law, the alleged defect did not have

---

[5] Plaintiff in her opposition states that Dr. Hutchinson was the expert. (ECF No. 35 at 10.) However, the Court interprets that as an error.

the characteristics of a trap and was too trivial to be actionable.") Plaintiff's argument that the area was an "optical trap" is contrary to her testimony. (ECF No. 35 at 10.) Plaintiff testified at her deposition, that at the time of the incident, there was "pure daylight … it was not dark … it was daylight". (ECF No. 34-5 at 72.) Importantly, this location was where the Plaintiff had lived. When asked at her deposition as to the timing, she first stated that she stayed there one night before going to Florida, where she remained mostly (*see id.* at 18-21) but later testified that she stayed at the Avalon apartment for consecutive nights and months (*see id.* at 24). Additionally, Mr. Watt testified that he and Plaintiff lived at the Melville Avalon location for about two years. (*See* ECF No. 34-7 at 12-15.) Yet, they travelled back and forth to Florida, which was their primary residence. (*Id.*) With that, the location of the defect at issue was not unknown territory to Plaintiff.

Courts across the country have – overwhelmingly – not found actionable defects in speed humps or bumps. *See e.g., Rivera v. City of New York*, 870 N.Y.S.2d 241, 243 (N.Y. App. Div. 1st Dep't 2008) ("Defendant established its prima facie entitlement to summary judgment by showing that the speed bump was plainly observable and did not pose any danger to someone making reasonable use of his or her senses."); *Heflin v. Am. Home Wildwood Ests., L.P.*, 936 So. 2d 226, 231 (La. Ct. App. 2d Cir. 2006) ("The jurisprudence contains cases finding speed bumps were not unreasonably dangerous. …  speed bumps have social utility, even though they create a hazard to inattentive pedestrians…."); *Smith v. Westdale Asset Mgmt., Ltd.*, 353 So. 3d 108, 111 (Fla. Dist. Ct. App. 2022) ("Appellant thus knew that speed bumps proliferated at the complex, including the specific set of speed bumps at the place where she tripped. …record does not indicate that the speed bump was an inherently dangerous condition that would cause injury");

17

*Moncla v. Albertson's Inc.*, 670 So. 2d 316, 319 (La. Ct. App. 3d Cir. 1996) (finding speed bumps did not create an unreasonable risk).

This case is akin to *Bursztein*, where the Court granted summary judgment to Defendant due to triviality. 2021 WL 3371036, at *3. In *Bursztein*, the plaintiff fell "as a result of a raised piece of metal at the top of an escalator" at a Best Buy location. *Id.* at *1. The Court was faced with deciding whether a "defective metal blended into the surrounding floor." *Id.* at *3. There, the Court citing to the Second Circuit in *Coyle*, found that based on the photographs submitted, the defect at issue did not blend into the floor. *Id.* Therefore, reviewing the stipulated to pictures submitted by the parties (*see* ECF No. 34-12) and the uncontested fact that the alleged defect was half an inch (*see* ECF No. 36 at ¶ 5), the inescapable conclusion is that the defect is trivial. *See Snyder v. AFCO Avports Mgmt., LLC*, 219 N.Y.S.3d 360 (N.Y. App. Div. 2d Dep't 2024) (discussing that when a party moves for summary judgment on the ground of triviality, "a picture … is worth a thousand words.") Having concluded this way, the remaining arguments for constructive notice need not be considered.

Finally, Plaintiff's claim of negligence per se claim likewise fails.  There is "a distinction between State statutes … and local ordinances or administrative rules and regulations on the other …. violation of a State statute that imposes a specific duty constitutes negligence per se, or may even create absolute liability, … violation of a municipal ordinance constitutes only evidence of negligence." *Elliott v. City of New York*, 747 N.E.2d 760, 762 (N.Y. 2001) (internal citations omitted). Plaintiff cites Property Maintenance Code of New York State § 102.2 in the Complaint and the motion papers. Plaintiff misidentifies the relevant statute. At oral argument, Plaintiff conceded that 102.2 is the incorrect section. Here, the likely applicable provision would be the Maintenance Code of New York State § 302.3, which is a *regulation* incorporated into

New York's Administrative Code. *See* N.Y. Comp. Codes R. & Regs. tit. 19, § 1219.2 ("The 2025 PMCNYS is incorporated by reference in Part 1226 of this Title."); *see also* 2025 Property Maintenance Code of New York State, Preface ("The Property Maintenance Code of New York State (PMCNYS) establishes minimum requirements for the maintenance of existing buildings through regulations that contain clear and specific property maintenance and property improvement provisions.") Even if Plaintiff relied upon the correct provision, Plaintiff has not articulated how the statute or regulation applies here. Rather, Plaintiff's position is simply that the trivial defect doctrine does not apply when negligence per se is alleged (ECF No. 35 at 11-12), while Defendant argues that the speed hump was nevertheless in good repair (ECF No. 39 at 5-6). *See Dance v. Town of Southampton*, 467 N.Y.S.2d 203, 206 (N.Y. App. Div. 2d Dep't 1983) ("Negligence per se is not liability per se, however, because the protected class member still must establish that the statutory violation was the proximate cause of the occurrence.") While Plaintiff references the New York State Building Code and Americans with Disability Act ("ADA") § 303.2 (regarding vertical changes in level) in the instant opposition, no reference is made in the Complaint. (*See* ECF Nos. 34-3; 35 at 11.) However, Plaintiff asserts that she raised in her interrogatory responses other statutory violations, including the ADA (*See* ECF No. 34-6), and therefore Defendant was on notice as to these additional legal theories.

In New York, common law negligence and negligence per se are distinct and independent causes of action. *See e.g.*, *Colon v. Pohl*, 995 N.Y.S.2d 139, 140 (N.Y. App. Div. 2d Dep't 2014) (treating the two claims separately); *Heyman v. Harooni*, 18 N.Y.S.3d 699, 701 (N.Y. App. Div. 2d Dep't 2015) (same). Indeed, a different standard applies to each. *See L.J. v. Zhang*, 84 Misc. 3d 901, 909 (N.Y. Sup. Ct. 2024). ("Under common law negligence, there must be a duty owed that is breached, caused by the defendant's actions leading to the plaintiff's harm. Negligence per

19

se, however, establishes the elements of duty and breach through the unexcused violation of a statute.") Courts in this Circuit treat these types of claims separately as well when assessing New York negligence claims. *See e.g.*, *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 69-71 (S.D.N.Y. 2022); *Doe v. Sigma Chi Int'l Fraternity, Inc.*, No. 23-CV-1452 (AJB) (ML), 2025 WL 2203001, at *8 (N.D.N.Y. Aug. 4, 2025) ("[plaintiff] appears to assert four different causes of action—negligence, negligent breach of assumed duties, negligence *per se*, and willful and wanton misconduct…").

Section 302.3 of New York's Property Maintenance Code states "[s]idewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions." Negligence per se is a doctrine that permits a plaintiff to establish a breach of duty by demonstrating that the defendant violated a statute or regulation enacted to protect a specific class of persons from a particular type of harm. *See Dance*, 467 N.Y.S.2d at 206; *see also Nassau Cnty. Bridge Auth. v. Olsen*, 130 F. Supp. 3d 758-59 (E.D.N.Y. 2015) (stating that violation of a federal or state statute constitutes negligence *per se* under New York law). However, the maintenance code is not a statute but a regulation, and as such, negligence rather than negligence per se applies. *See Conte v. Large Scale Dev. Corp.*, 176 N.E.2d 53, 57 (N.Y. 1961) ("We have repeatedly held that the violation of a rule of an administrative body, lacking the force and effect of a substantive legislative enactment, 'did not establish negligence per se, but was simply some evidence of negligence."); *see also Toussaint v. Port Auth. of New York & New Jersey*, 188 N.E.3d 571, 581 (N.Y. 2022) (Wilson, J., dissenting) (internal citations and quotations omitted) ("the well established proposition that whereas a violation of a statute may of itself establish negligence, a rule or ordinance does not have the same force. That proposition … is a rule of general application, not a rule specific to the [any

20

particular law]"); *Velazquez v. Tyler Graphics, Ltd.*, 625 N.Y.S.2d 537, 539 (N.Y. 1995) (internal citation omitted) ("the violation of a rule of an administrative body, lacking the force and effect of a substantive legislative enactment, 'did not establish negligence *per se*'").

Both parties address *McGrane-Mungo v. Dag Hammarskjold Tower*, which articulated that "[v]iolations of that ordinance and rule, respectively, are 'not per se non-trivial, and therefore actionable as a matter of law,' but they are 'one factor to consider when deciding the issue of triviality.'" 243 N.Y.S.3d 52 (N.Y. App. Div. 1st Dep't 2025). This statement alone does not relieve Plaintiff from the fact that the defect alleged is trivial. In *McGrane-Mungo*, a different state code was at issue, as well as issues regarding experts that should have been left to the jury. *See id.* In the instant matter, the undisputed fact that the defect was half an inch coupled with the lack of argument as to whether the elements of the claim have been established, leads to the conclusion that the claim must fail. Notably, a speed hump is not intended to protect pedestrians walking on it. Speed humps are generally known to slow down vehicles to prevent an accident.[6] Therefore, even assuming that Plaintiff established the elements of this claim, the injury that occurred was a result of Plaintiff's failure to see the open and obvious speed hump meant for other purposes and not to walk over. *See Brown v. United States*, No. 07-CV-4867(ADS) (WDW), 2009 WL 10708812, at *2 (E.D.N.Y. June 3, 2009) ("Unsurprisingly, New York courts have held that speed bumps and other similar impediments are open and obvious conditions.")

Nonetheless, the Court finds the reliance upon the statutes misplaced (*see Coene v. 3M Co. ex rel. Minnesota Min. & Mfg. Co.*, No. 10-CV-6546 (FPG), 2015 WL 5773578, at *5 (W.D.N.Y.

---

[6] *See* Liam Cope, *What Are Speed Humps and How Do They Work?*, ENGINEERFIX (Jan. 2, 2026), https://engineerfix.com/what-are-speed-humps-and-how-do-they-work/ ("A speed hump is a traffic calming device designed to slow vehicle speeds on local roads by introducing a gradual, rounded vertical deflection in the pavement. … This engineering solution serves as an alternative to traditional enforcement, which may not be feasible for constant speed monitoring on every local street.")

Sept. 30, 2015)("whether to apply negligence per se, it is necessary at the outset to determine whether the plaintiff is a member of the discrete, definite class of persons the statute in question was designed to protect")), and the negligence per se claim fails as a matter of law. *See Brown v. BT-Newyo, LLC*, 941 N.Y.S.2d 343, 345 (N.Y. App. Div. 3d Dep't 2012) (discussing *inter alia* that Section 302.3 is a "violation[] of regulations as opposed to statutory violations" and the plaintiff failed to raise an issue of fact that a specific statute was violated); *see also Conte*, 176 N.E.2d at 56–57 ("the court did err, as the Appellate Division held, in charging the jury that the defendants' violation of the [Board of Standards and Appeals] rule constituted negligence as a matter of law").

Accordingly, Defendant has met its burden by demonstrating the lack of an actionable claim under the trivial defect doctrine.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 34) is **GRANTED**. The Clerk of the Court is respectfully directed to enter judgment in favor of Defendant and close the case.

Dated:  Central Islip, New York.
         February 4, 2026

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

22